UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT MENSAH,

        Plaintiff,        CASE NUMBER: 10-13233
                                District Judge Victoria. A. Roberts
v.                                  Magistrate Judge Mona K. Majzoub

PATRICIA L. CARUSO, et al,

        Defendants.
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendants' Objections to the Magistrate's Report and Recommendation (R&R) on Defendants' Motion to Dismiss or for Summary Judgment. (Doc. 13). Defendant's Motion was referred to Magistrate Judge Mona K. Majzoub, pursuant to 28 U.S.C. §636(b)(1)(B), for an R&R. On July 15, 2011, Magistrate Majzoub issued an R&R recommending that the Court GRANT Defendant's motion in part. The Magistrate recommends that the Court dismiss Plaintiff's:

(1) Title VII claims against Caruso, Wolfenbarger, and Haas in their individual and official capacities;

(2) Section 1981 & 1983 claims against the MDOC, Caruso, Wolfenbarger, and Haas in their official capacities;

(3) Section 1981 claim against Caruso in his personal capacity;

(4) Section 1983 procedural & substantive due process claims against Caruso, Wolfenbarger, and Haas in their individual capacities;

1

(5) Section 1983 equal protection claim against Caruso in her individual capacity;

(6) All state law claims against Caruso;

(7) ELCRA claims against the MDOC, Wolfenbarger, and Haas in their individual capacities;

(8) Violation of Article 1, § 17 of the Michigan Constitution against MDOC, Caruso, Wolfenbarger, and Haas in their official capacities; and

(9) Intentional infliction of emotional distress against all Defendants.

The Magistrate recommends that the following claims proceed to trial:

(1) Title VII claims against the MDOC;

(2) Section 1981 claims against Wolfenbarger and Haas in their individual capacities;

(3) Section 1983 equal protection claims against Wolfenbarger and Haas in their individual capacities;

(4) ELCRA claims against Wolfenbarger and Haas in their individual capacities; and

(5) Violation of Article 1, § 17 of the Michigan Constitution against Wolfenbarger and Haas in their individual capacities;

The Court **ADOPTS** Magistrate Majzoub's recommendation with **MODIFICATION**. The Court dismisses all claims recommended by the Magistrate, as well as Plaintiff's claims based on violation of the Michigan Constitution. The Court allows all other claims to proceed.

**II.   BACKGROUND**

On April 13, 2010, Plaintiff, a former employee with the Michigan Department of Corrections (MDOC), filed suit against the MDOC, MDOC Director Patricia Caruso, Warden Hugh Wolfenbarger, and Deputy Warren Randall Haas, alleging employment discrimination, harassment, and retaliation.

Plaintiff began working for the MDOC in 1989.  He says he was the target of a sustained, inventive, diabolical, malicious, campaign of harassment, humiliation and intimidation.  He says that the purpose of the campaign was to cause him to resign or to be constructively discharged.

Plaintiff says he was discriminated against because he is an African-American of Ghanaian descent.  He brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, 42 U.S.C. § 1981, the Elliott-Larsen Civil Rights Act (ELCRA), the Michigan Constitution, and various other state laws.

### III.  STANDARD OF REVIEW

When reviewing a Fed. R. Civ. P. 12(b)(6) motion, the trial court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein."  *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  Because a Fed. R. Civ. P. 12(b)(6) motion rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of witnesses." *Miller*, 50 F.3d at 377 (citing *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)).  However, while this standard is decidedly liberal, it requires more than the bare

3

assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). Rather, the complaint must contain either direct or inferential allegations with regard to all the material elements to sustain recovery under some viable legal theory. *DeLorean*, 991 F.2d at 1240 (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct.1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must show a genuine issue for trial. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

**IV. ANALYSIS**

**A. Objection 1- Continuing Violations Doctrine**

Defendants object to the Magistrate's application of the continuing violations doctrine to avoid the statute of limitations for many of Plaintiff's claims. Defendants say the circumstances of Plaintiff's case show the doctrine is inappropriate.

However, contrary to Defendant's assertions, the Magistrate did not rely on the continuing violations doctrine to avoid the statute of limitations. Instead, she notes that Plaintiff argues that there is a question of fact as to whether his claims may constitute a continuing violation. The Magistrate also notes that Defendants failed to address the continuing violations doctrine in their reply brief, despite the fact that Plaintiff raised the doctrine in his response. But the Magistrate does not rely on the continuing violations doctrine in recommending that Plaintiff's claims proceed; instead, she concludes that Defendants fail to carry their burden to show that Plaintiff's claims should be dismissed. This Court agrees. The entirety of Defendants' argument in their motion to dismiss consists of one sentence: "Plaintiff has not limited his claims to those included in his most recent, June 29, 2009, U.S. Equal Employment Opportunity Commission complaint, but makes claims that arose several years earlier-- claims that are clearly barred by the statute of limitations." Defendants do not identify which claims they believe should be dismissed or even the statute of limitations period.

Moreover, Defendants provide no persuasive reasoning why the continuing violations doctrine cannot, as a matter of law, apply to Plaintiff's Title VII claims.

The continuing violations doctrine applies where "(1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have

5

been avoided." *Hensley v. City of Columbus,* 557 F.3d 693, 697 (6th Cir. 2009).

Read liberally, Plaintiff's Complaint alleges a series of minor discriminatory events which created a hostile work environment, caused him continuous injury over a lengthy period of time, and culminated in his constructive discharge. Thus, there is a question as to whether the continuing violations doctrine applies to Plaintiff's claims.

Finally, Defendants say that even if the continuing violations doctrine applies to Plaintiff's Title VII claims, it cannot apply to his ELCRA claims because Michigan law does not recognize the doctrine.

Defendants are correct that Michigan abolished the continuing violations doctrine for ELCRA claims which fall outside the statute of limitations. *See Garg v. Macomb Cnty Community Mental Health Services*, 472 Mich. 263 (2005). However, as already stated, Defendants fail to establish that Plaintiff's ELCRA claims are time barred.

This objection is overruled.

**B. Objection 2- Younger Abstention**

Defendants say the Court should abstain from deciding Plaintiff's Title VII and ELCRA claims because Plaintiff filed suit while he had an unresolved grievance before the State Civil Service Commission for race and national origin discrimination. Defendants say that abstention is appropriate under *Younger v. Harris,* 401 U.S. 37 (1971).

In *Younger,* the Supreme Court held that a federal court may not enjoin a pending state criminal prosecution. In some circumstances, this doctrine has been extended to other pending state civil and administrative proceedings. *See Ohio Civil Rights Comm'n v. Dayton Christian School, Inc.,* 477 U.S. 619 (1986).

"A federal court should abstain whenever it determines (1) that state proceedings are pending; (2) that the state proceedings involve an important state interest; and (3) that the state proceedings will afford the plaintiff an adequate opportunity to raise his . . . claims." *Mann v. Conlin,* 22 F.3d 100,105 (6th Cir. 1994) (internal quotes omitted).

The Court declines to abstain; *Younger* abstention is only appropriate if a plaintiff seeks to enjoin a state litigation. The Sixth Circuit explained:

> In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings. *Crawley v. Hamilton Cnty Comm'n,* 744 F.2d 28, 30 (6th Cir. 1984); *see also Devlin v. Kalm,* 594 F.3d 893 (6th Cir. 2010).

Here, Plaintiff is the plaintiff/complainant in the Civil Service Commission grievance, and is not asking this Court to prevent the state court from enforcing a judgment or remedy against him.

This objection is without merit.

**C. Objection 3- Section 1981 Claims**

Defendants say Plaintiff's § 1981 claims must be dismissed because, as a matter of law, Michigan civil servants have no employment contract, express or implied.

Defendants rely on *Matulewicz v. Governor of Michigan,* 174 Mich. App. 295 (1989) to support this proposition. They say *Matulewicz* rejected application of the Michigan Supreme Court's decision in *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579 (1980). They say the Magistrate erroneously relies on post-*Matulewicz* cases which involve interpretations of *Toussaint.*

The Court disagrees.

In *Toussaint,* the Michigan Supreme Court held that an employee may show an express or implied "just cause" employment contract through an employer's policies, procedures, or oral assurances, if they create a legitimate expectation of permanent employment and there is mutual assent. 174 Mich. App at 615.

In *Matulewicz,* the plaintiffs, public employees, relied on *Toussaint* to show that they had an implied contract. The Michigan Court of Appeals pointed out that "Michigan courts have not yet established that *Toussaint* applies to public employees." *Matulewicz,* 174 Mich. App. at 304. The court rejected the argument that *Toussaint* applied to civil servants; instead, it concluded that "*Toussaint* deals with private employment and the due process property component deals with public employment." *Id.*

However, as the Magistrate concludes, Michigan courts subsequently extended *Toussaint* to public employees. *See Manning v. City of Hazel Park,* 202 Mich. App. 685 (1993); *Thorin v. Bloomfield Hills Bd. Of Educ.,* 203 Mich. App. 692 (1994). Thus, public employees may allege claims based on an implied contract, as long as the contract does not violate or exceed "the controlling body's statutory authority." *Thorin,* 203 Mich. App. at 701.

Clearly, a public employee may sue alleging an implied employment contract.

However, Defendants say that this holding applies only to employees of *local* governmental entities, not members of the *State's* civil service. Defendants cite no authority for this proposition, and the Court finds the argument unpersuasive.

Michigan case law clearly holds that public employees may bring claims based

on implied contracts; these cases do not appear to distinguish between State and local public employees. Moreover, Michigan courts have implicitly found *Toussaint* applicable to state public employees. *See Dudkin v. Civil Service Comm.,* 127 Mich. App. 397 (1983).

The Court is not persuaded that *Toussaint* extends only to local public employees. This objection is overruled.

### D. Objection 4- Qualified Immunity

Defendants say the individual Defendants are entitled to qualified immunity for Plaintiff's § 1981 claim because he cannot show that the individual Defendants were aware of the alleged employment contract.

However, Defendants cite no authority for the proposition that Plaintiff must demonstrate that each Defendant knew about the alleged contract in order to avoid qualified immunity.

The Court considers a two part test to determine if an official is entitled to qualified immunity: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Colvin v. Caruso,* 605 F.3d 282, 290 (6th Cir. 2010).

Thus, the Court must first consider whether Plaintiff alleges conduct through which Defendants violated his constitutional rights.

Section 1981 states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . .

9

This statute "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin College,* 440 F.3d 350, 358 (6th Cir. 2006).

Plaintiff alleges, in detail, many ways in which he was treated less favorably than white employees because of his race; he says this treatment interfered with his ability to enforce his employment contract in the same manner as white employees. Taken as true, and in the light most favorable to Plaintiff, he states a § 1981 claim.

Moreover, an employee's right to be free from race discrimination in the making and enforcement of employment contracts was a clearly established right at the time of the alleged acts, approximately 2005-2009.

At this stage, it is not clear that Defendants are entitled to qualified immunity for Plaintiff's § 1981 claims; this objection is overruled.

### E. Objection 5- Equal Protection

Defendants say that Plaintiff does not state an equal protection claim. The Court disagrees.

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspected class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Township of Richmond,* 641 F.3d 673, 681-82 (6th Cir. 2011). Here, Plaintiff alleges that he was targeted for discriminatory treatment because he is a member of a suspect class.

To state a § 1983 equal protection claim, a "plaintiff must allege that a state actor

intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer District,* 922 F.2d 322, 341 (6th Cir. 1990).

Plaintiff alleges he is a member of a protected or suspect class because he is African-American. He also alleges he was discriminated against in a number of ways because of his membership in this class– for example, he was subject to different employment conditions than white co-workers who were similarly situated. Complaint ¶¶ 19, 22.

Despite Defendants' objection, Plaintiff's Complaint contains detailed factual allegations, which, if true, show that Plaintiff was the target of intentional discrimination because he is African-American. And, despite Defendants' statement to the contrary, Plaintiff does not have to present direct evidence or a "comparative analysis" showing disparate treatment to survive a motion to dismiss for failure to state a claim. *See Swierkiewicz v. Sorema,* 534 U.S. 506 (2002).

**F. Objection 6- ELCRA**

Defendants object to the Magistrate's inference that Defendants Wolfenbarger and Haas were agents of the MDOC with supervisory authority over Plaintiff. Defendants say the Complaint is vague and ambiguous, and does not allege that Wolfengarger and Haas were Plaintiff's supervisors, or that they took any adverse action against him on the basis of his race or national origin. Defendants ask that Plaintiff's ELCRA claims be dismissed. The Court declines this invitation.

Plaintiff alleges that Wolfenbarger imposed "various unjustified terms and conditions of employment," which "were not the normal employment conditions for other

similarly situated white and/or American-born employees." Complaint ¶ 19. Based on these allegations, it is not unreasonable to infer that Wolfenbarger was in a supervisory position over Plaintiff.

Moreover, Plaintiff alleges that he was required to ask permission from Wolfenbarger and Haas before requesting leave and before going to lunch, and that Haas ordered him to complete an assignment early. Complaint ¶ 19 d, 19f, 19w.

It appears from Plaintiff's allegations that Wolfenbarger and Haas had some control over Plaintiff's terms and conditions of employment; therefore, the Magistrate's inference that Wolfenbarger and Haas were Plaintiff's supervisors is justified.

Finally, despite Defendants' contentions, the allegations in Plaintiff's Complaint are not vague or ambiguous–indeed, they are detailed and specific. Plaintiff clearly alleges that these changes to the terms and conditions of his employment were because of his race and national origin. Complaint ¶ 78, 83, 105.

Defendants' objection is without merit.

**G. Objection 7- Michigan Constitution**

Defendants say that Michigan law does not permit claims for damages against individual government employees for violation of the Michigan Constitution. Defendants are correct.

In *Jones v. Powell,* 462 Mich. 329, 335 (2000), the Michigan Supreme Court held that there is "no damage remedy for a violation of the Michigan Constitution against a municipality or an individual government employee." Because Plaintiff asks solely for money damages, his claims against Defendants Wolfenbarger and Haas in their individual capacities are dismissed.

**V.	CONCLUSION**

The Court **ADOPTS** Magistrate Majzoub's recommendation with **MODIFICATION**. The following claims will proceed:

(1) Title VII claims against the MDOC;

(2) Section 1981 claims against Wolfenbarger and Haas in their individual capacities;

(3) Section 1983 equal protection claims against Wolfenbarger and Haas in their individual capacities; and

(4) ELCRA claims against Wolfenbarger and Haas in their individual capacities.

All other claims are dismissed.

**IT IS ORDERED.**

                                    /s/ Victoria A. Roberts
                                    Victoria A. Roberts
                                    United States District Judge

Dated: September 12, 2011

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 12, 2011.

S/Linda Vertriest
Deputy Clerk

---