UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT MENSAH,

      Plaintiff,

v.                                                                                          Case Number: 10-13233
                                                                        Honorable Victoria A. Roberts

PATRICIA L. CARUSO, et al.,

      Defendants.
_____/

## ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT (Doc. # 49)

**I.    INTRODUCTION**

After resigning from his administrative position at Macomb Correctional Facility ("MCF"), Vincent Mensah ("Plaintiff") filed this employment discrimination action against the Michigan Department of Corrections ("MDOC"), MCF Warden Hugh Wolfenbarger ("Wolfenbarger"), and MCF Deputy Warden Randal Haas ("Haas"; collectively "Defendants"). Plaintiff also named MDOC Director Patricia Caruso as a defendant; all claims against her have been dismissed.

Plaintiff alleges Defendants discriminated against him, retaliated against him, and subjected him to a hostile work environment on the basis of his race and national origin, in violation of: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (2) 42 U.S.C. § 1981; (3) 42 U.S.C. § 1983; and (4) the Michigan Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq.* ("ELCRA").

Before the Court is Defendants' Federal Rule of Civil Procedure 56 Motion for Summary Judgment. (Doc. # 49). This matter is fully briefed. Pursuant to L.R.

7.1(e)(2), the Court waives oral argument.

The Court **GRANTS** Defendants' Motion for Summary Judgment; all of Plaintiff's claims are **DISMISSED**.

## II.	BACKGROUND

The following facts are undisputed. Plaintiff was born in Ghana, West Africa; he is both an American and West African citizen. From 1997 until he resigned in February 2009, Plaintiff was an employee of MDOC; his position during that time was MCF's Business Manager. As the Business Manager, Plaintiff was primarily responsible for the financial management and budgeting at MCF. The Business Manager reports directly to the Warden.

Defendant Wolfenbarger became MCF's Warden in 2002; defendant Haas became MCF's Deputy Warden in 2007. Both Wolfenbarger and Haas remained in those positions until after Plaintiff resigned in 2009. Plaintiff reported to Wolfenbarger.

From 2005 to February 2009, Plaintiff filed several complaints with the Equal Employment Opportunity Commission ("EEOC"), as well as several internal grievances, against Defendants alleging retaliation, hostile work environment, and discrimination based on race and/or national origin.

On June 29, 2009, Plaintiff filed a Charge of Discrimination with the EEOC against Defendants alleging employment discrimination, retaliation, and hostile work environment. Specifically, Plaintiff said he was: (1) "subjected to different terms and conditions of employment"; (2) "unable to tolerate the hostile work environment any longer"; and (3) "constructive[ly] discharge[d] due to [his] race, ... national origin, ... and

2

in retaliation for having made a complaint." On May 19, 2010, the EEOC issued Plaintiff a right-to-sue letter on this Charge.

Plaintiff filed this action on August 13, 2010. In his First Amended Complaint, Plaintiff alleges violations of Title VII, 42 U.S.C. §§ 1981 and 1983, the ELCRA, Section 17 of the Michigan Constitution, and various other state laws.

On December 22, 2010, Defendants filed a motion to dismiss. The Court granted the motion in part, dismissing all but the following claims: (1) Title VII claims against MDOC for discrimination, retaliation, and hostile work environment; (2) § 1981 claim against Wolfenbarger and Haas in their individual capacities; (3) § 1983 equal protection claim against Wolfenbarger and Haas in their individual capacities; and (4) ELCRA claims for discrimination, retaliation, and hostile work environment against Wolfenbarger and Haas in their individual capacities. All claims against Patricia Caruso were dismissed.

Defendants move for summary judgment on the remaining claims.

### III. STANDARD OF REVIEW

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id.* at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## IV. ANALYSIS

### A. Violation of 42 U.S.C. § 1981 (Count III)

In Count III of his Amended Complaint, Plaintiff says Wolfenbarger and Haas

4

"prevented [him] from enforcing his employment contract" by harassing, demeaning, and insulting him "[o]n the basis of [his] race and national origin," and by interfering with his ability to manage his subordinates – in violation of 42 U.S.C. § 1981.

Defendants say Plaintiff's § 1981 claim must be dismissed because Supreme Court and Sixth Circuit precedent provide that § 1983 is the exclusive remedy against state actors for a violation of rights under § 1981. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989) (holding that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981" for claims against a local government); McCormick v. Miami Univ., 693 F.3d 654, 661 (6th Cir. 2012) (holding that, under Jett, "§ 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity").

Plaintiff cites to Ninth Circuit precedent and argues that – although the Sixth Circuit in McCormick declared § 1983 to be the exclusive remedy against state actors for violations of § 1981 – the Court should deny summary judgment on his § 1981 claim, because "were plaintiffs [sic] allegations ... brought in the 9th Circuit, a motion for summary judgment ... would probably be denied."

The Court is bound by decisions of the Sixth Circuit – not the Ninth. Accordingly, Plaintiff's § 1981 claim against Wolfenbarger and Haas in their individual capacities fails as a matter of law. See McCormick, 693 F.3d at 661; see also Mensah v. Mich. Dept. of Corr., 513 Fed. Appx. 537, 538 (6th Cir. 2013).

Count III of Plaintiff's Amended Complaint is dismissed.

**B. Violation of Title VII, the ELCRA, and 42 U.S.C. § 1983**

5

Plaintiff's remaining Title VII claims are against MDOC and include: Discrimination (Count I), Retaliation (Count IV), and Hostile Work Environment (Count VI). His remaining ELCRA claims are against Wolfenbarger and Haas in their individual capacities and include: Retaliation (Count IV), Discrimination (Count V), and Hostile Work Environment (Count VI). Plaintiff's Equal Protection/Discrimination claim against Wolfenbarger and Haas under 42 U.S.C. § 1983 (Count II) also remains.

### 1. Discrimination

Plaintiff says MDOC violated Title VII and Wolfenbarger and Haas violated the ELCRA and § 1983 by discriminating against him based on his race and/or national origin.

Discrimination claims under Title VII, the ELCRA, and § 1983 are all analyzed under the same analytical framework. *See Humenny v. Genex Corp., Inc.*, 390 F.3d 901, 906 (6th Cir. 2004) ("Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases."); *Weberg v. Franks*, 229 F.3d 514, 522-23 (6th Cir. 2000).

Because Plaintiff presents only circumstantial evidence – and no direct evidence – of discrimination, the Court reviews his discrimination claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). To survive summary judgment, Plaintiff must first establish a prima facie case of discrimination. *Id.*

If Plaintiff establishes a prima facie case, a rebuttable presumption of discrimination exists, and Defendant "bears the burden of production to put forth a

'legitimate, nondiscriminatory reason' for the complained of adverse treatment." *Id.* (citation omitted). "The explanation provided must be legally sufficient to justify a judgment for the defendant." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). If Defendant provides a sufficient explanation, the presumption of discrimination falls away, and Plaintiff must show that the proffered reason was merely a "'pretext for discrimination.'" *Wright*, 455 F.3d at 706-07 (citations omitted). Although the burden of production shifts under this analysis, Plaintiff "continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Id.* at 707.

To establish a prima facie case of employment discrimination, Plaintiff must show that he: (1) was a member of a protected class; (2) was qualified for his job; (3) suffered an adverse employment action; and (4) was treated differently than similarly-situated, non-protected employees. *Id*. It is undisputed that Plaintiff meets the first two elements of the prima facie case: he is an African-American of Ghanian descent; and, he was qualified for the Business Manager position.

Defendants say Plaintiff cannot demonstrate a prima facie case of employment discrimination because: (1) he did not suffer an adverse employment action; and (2) he cannot identify similarly-situated employees outside his protected class.

Plaintiff says he was discriminated against during his employment at MCF based on his race and/or national origin in the following ways: (1) he was denied a request for annual leave; (2) he had to notify Wolfenbarger when he arrived to work in the morning and when he left MCF's grounds; (3) he had to carry his ID on him while working; (4) other employees watched his whereabouts at work at Wolfenbarger's direction; (5) he

was not allowed to work flex time; (6) he had to participate in a security drill that involved checking vehicles outside during winter; (7) he had to filter any instructions he had for Douglas Ford, an employee under his supervision, through Wolfenbarger; (8) he was given an employee performance evaluation that (i) gave him a "needs improvement" rating, (ii) required him to get permission to enter leave requests or leave the facility, and (iii) prohibited him from emailing Wolfenbarger; and (9) he was disciplined (five day suspension subsequently reduced to written reprimand). Plaintiff brings all of these complaints against Wolfenbarger and MDOC; the only one that he also brings against Haas is the complaint regarding the winter security drill.

<u>Adverse Employment Action</u>

"An adverse employment action in the context of a Title VII discrimination claim is a 'materially adverse change in the terms or conditions of employment because of the employer's actions.'" *Michael v. Caterpillar Fin. Services Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (citation omitted). In *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002), the Sixth Circuit explained that:

> [a] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

"[D]e minimis employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (citation omitted). For example, "[r]eassignments without changes in salary, benefits, title, or work hours

8

usually do not constitute adverse employment actions." *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002) (citation omitted).

Defendants argue that none of Plaintiff's employment grievances rises to the level of being materially adverse. Plaintiff does not respond to Defendants' argument except by summarily stating that Defendants' actions do constitute adverse employment actions.

Based on the Sixth Circuit's explanation of what constitutes an adverse employment action, the Court finds it to be clear that most of the actions Plaintiff complains of are not materially adverse actions. In particular, the first seven actions complained of are not adverse employment actions, because they did not materially change Plaintiff's employment conditions. *See Michael*, 496 F.3d at 594; *Bowman*, 220 F.3d at 462 (and cases cited). Rather these grievances fall under the category of being a mere inconvenience.

Plaintiff's eighth and ninth complaints – the performance review and five day suspension, respectively – require more analysis. Performance review plans can constitute adverse employment actions. *See Michael*, 496 F.3d at 594-95 (noting that the Sixth Circuit has rejected the rule that only "ultimate employment decisions" can be materially adverse). In addition, suspensions without pay can be materially adverse. *See White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 801 (6th Cir. 2004) (en banc) (holding that suspension without pay for over a month was materially adverse); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.* 263 F.3d 208, 223-24 (2d Cir. 2001) (holding that a suspension without pay for one week was an adverse employment action even

though the employee was later reimbursed for lost wages because the employee "suffered the loss of the use of her wages for a time.").

Plaintiff's performance review rated him as "needs improvement" and required that he abide by certain minor conditions. There is no evidence that this caused a materially adverse change in Plaintiff's employment conditions, and it did not change his compensation, benefits, position, or responsibilities.

On the other hand, although Plaintiff's suspension was later reduced to a written reprimand, he was not reimbursed for the lost pay. This did affect Plaintiff's compensation.

However, the Court need not determine whether the performance review and suspension constitute adverse employment actions, because – as explained below – Plaintiff cannot identify a similarly-situated, non-protected employee, and he fails to raise a genuine issue of material fact regarding whether Defendants' proffered reasons for these actions were pretext for discrimination.

<u>Similarly-Situated Employees Outside Plaintiff's Protected Class</u>

Defendants contend that even if Plaintiff suffered an adverse employment action, his discrimination claims fail because he cannot establish the final element of the prima facie case – that he was treated differently than similarly-situated, non-protected employees for the same or similar conduct.

To be similarly-situated for purposes of a discrimination claim, the individual who Plaintiff compares his treatment to must be similarly-situated "*in all respects*...Thus, ...[they] must have dealt with the same supervisor, have been subject to the same

standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original).

Plaintiff received the five day suspension and subsequent performance review because he was not accountable at a mobilization drill. Plaintiff says another employee, Joe Wade – also absent for that drill – was not disciplined.

Defendants say that Plaintiff and Wade are not similarly-situated for the discrimination claim because Plaintiff, as the Business Manager, was a high-level administrative officer with supervisory responsibilities who reported to, and was supervised by, the Warden, whereas Wade was an Assistant Resident Unit Officer who worked inside the housing units at MCF, supervised the inmates, and reported to, and was supervised by, the Resident Unit Officer. In addition, Defendants say Plaintiff was held to a higher standard than Wade as an administrative officer and supervisor; specifically, Plaintiff was expected to "serve as a good example for subordinate staff..."

Defendants successfully show that Plaintiff and Wade are not similarly-situated. They have different supervisors; they are subject to different standards; and due to their different positions, they were subject to differentiating circumstances that distinguished their employer's treatment of them. *See id.*

Plaintiff fails to rebut Defendants' showing that he and Wade are not similarly-situated. Accordingly, no genuine issue of material fact exists on whether there are similarly-situated employees to Plaintiff. Plaintiff fails to establish the fourth element of

the prima facie case

Plaintiff fails to establish a prima facie case of discrimination. Thus, his employment discrimination claims under Title VII, the ELCRA, and § 1983 fail as a matter of law.

Moreover, the record shows that Defendants successfully proffered legitimate, nondiscriminatory reasons for their actions. In response, Plaintiff summarily states that he "can easily rebut the presumption of Defendants' legitimate nondiscriminatory reason for Wolfenbarger's decisions by a mountain of evidence...." However, despite acknowledging that Defendants proffered reasons were legitimate and nondiscriminatory, Plaintiff fails to provide any argument or support to actually rebut the reasons and show they were pretextual. Accordingly, even had Plaintiff established a prima facie case, his discrimination claims must be dismissed. *See Wright*, 455 F.3d at 706-07.

Plaintiff fails to establish a prima facie case of employment discrimination; he also fails to show that Defendants' nondiscriminatory reasons were pretextual. Therefore, Plaintiff's claims for employment discrimination under Title VII (Count I), the ELCRA (Count V), and § 1983 (Count II) are dismissed.

### 2. Hostile Work Environment

Plaintiff says he was subjected to a hostile work environment based on his race and national origin. The same actions that make up Plaintiff's discrimination claim make up his hostile work environment claim.

To survive summary judgment on his hostile work environment claim, Plaintiff

must establish that: "(1) he is a member of a protected class, (2) he was subjected to unwelcome verbal or physical conduct related to his membership in that class, (3) the harassment was based on his membership in that class, (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment that is severe or pervasive, and (5) the employer knew or should have known about the harassment, but failed to take any action to prevent it." *Choulagh v. Holder*, 528 Fed. Appx. 432, 436-37 (6th Cir. 2013) (citation omitted).

In analyzing the hostile work environment claim, the Court will not consider harassing acts "if there is no proof that the harassment was based on national origin [or race]." *Id.* at 437 (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000)). "Plaintiff cannot create a genuine issue of material fact by ignoring the absence of any discriminatory animus in the record and constructing the prima facie case with his subjective belief that Defendant considered his national origin [or race] a material factor in issuing discipline." *See id.* (citation omitted).

Defendants argue that Plaintiff's hostile work environment claim must be dismissed because he fails to show that any of their conduct "relates to" or is "based upon" his membership in a protected class. The Court agrees.

Plaintiff does not submit any evidence showing that the conditions of Plaintiff's employment or that Defendants' alleged harassment of him was "related to" or "based on" his race or national origin. The record clearly establishes that Plaintiff's work conditions (i.e., notifying Wolfenbarger when he arrived to work and left the premises, having to carry his ID on him, etc.) were based on legitimate, nondiscriminatory

business reasons. In addition, Plaintiff "ignor[es] the absence of any discriminatory animus in the record and construct[s] the prima facie case with his subjective belief that Defendant[s] considered his national origin [and/or race] a material factor in issuing discipline." *Id.* This is insufficient to establish the second or third element of a hostile work environment claim. *See id.* Accordingly, Plaintiff fails to raise a genuine issue of material fact for those elements, and summary judgment must be granted.

Moreover, Plaintiff admits in his deposition that his work performance did not suffer because of the alleged discrimination or harassment. Therefore, none of the alleged discrimination or harassment was so "severe or pervasive" that it "unreasonably interfered" with Plaintiff's work performance. *See, e.g., Bowman*, 220 F.3d at 464. Thus, Plaintiff also fails to create a genuine issue of material fact as to the fourth element of the prima facie case, and summary judgment must be granted.

Plaintiff's hostile work environment claim (Count VI) is dismissed.

### 3. Retaliation

The Court uses the same standard to analyze retaliation claims under Title VII and the ELCRA. *See Fuhr v. Sch. Dist. of City of Hazel Park*, 837 F.Supp.2d 675, 679, n. 5 (E.D. Mich. 2011) (citing *Humenny*, 390 F.3d at 906).

To establish a prima facie case of retaliation, Plaintiff must show that: "(1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known by defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and

the adverse employment action or harassment." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995-96 (6th Cir. 2009) (citation omitted).

If Plaintiff establishes a prima facie case, "the burden of production ... shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Id.* at 996 (citation omitted). If Defendants satisfies this burden, Plaintiff must show that "the proffered reason was not its true reason but merely a pretext for retaliation." *Harris v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010).

Plaintiff can do this by "demonstrating that the proffered reasons (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) were insufficient to motivate the employer's action." *Id.* at 486 (citation omitted). However, a "proffered reason cannot be proved to be pretext 'unless it is shown *both* that the reason was false, *and* that [retaliation] was the real reason.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). Plaintiff "must establish that his ... protected activity was a but-for cause of the alleged adverse action[s] by [Defendant]." *Univ. Of Texas Sw. Med. Ctr. v. Nassar*, — U.S. —, —, 133 S.Ct. 2517, 2534 (2013).

Plaintiff says Wolfenbarger retaliated against him while he worked at MCF by: (1) denying his request for annual leave in 2005; (2) condon[ing] and participat[ing] in the 2007 mobilization drill at MCF that resulted in his discipline; (3) initiating an investigation against him in January 2008; (4) issuing the "needs improvement" employee performance evaluation; and (5) writing a memo to him and the Regional Prison Administration saying that Plaintiff should not have told other employees about the

15

reduction in force.

Defendants say Plaintiff's retaliation claim must be dismissed because: (1) Plaintiff fails to establish a material dispute of fact that the protected activity was a but-for cause of the alleged adverse actions by Defendants; (2) no adverse action occurred; and (3) Plaintiff fails to show that Defendants' proffered reasons were not their true reasons but merely a pretext for discrimination. The Court agrees.

Although Plaintiff recognizes that he must establish causation, he fails to show, or even argue, how the protected activity and alleged retaliatory acts are causally connected other than by referring to block quotes from his complaint that are conclusory and unsupported.

Defendants provide legitimate, nondiscriminatory reasons for its actions. Wolfenbarger says he denied the annual leave request in 2005 because Plaintiff had continuously failed to fill a vacant position that was under his supervision. After a hearing, Plaintiff's grievance was denied, and the hearing officer found that "[t]he denial of annual leave had noting to do with [Plaintiff's] race or national origin. It had to do with [his] failure to cooperate with ... the filling of the accountant manager position." This reason is legitimate and nondiscriminatory.

Defendants also had a legitimate and nondiscriminatory reason to investigate the complaint against Plaintiff in 2008. It is their duty to investigate all internal grievances. Notably, Plaintiff received no discipline from the investigation.

In his email to Plaintiff and the Regional Prison Administration, Wolfenbarger informed Plaintiff that it was improper for him to email employees and tell them that

16

MCF was eliminating jobs. As the Warden, this was a legitimate and nondiscriminatory business concern for Wolfenbarger.

Plaintiff's complaint against Wolfenbarger for "condon[ing] and participat[ing]" in the mobilization drill which led to his discipline is misguided. The record clearly shows that Wolfenbarger was not present the day of the drill. In addition, there is no evidence to suggest he planned the drill; and even if he had, it would be nondiscriminatory because conducting security drills is a legitimate business exercise.

Finally, the performance review arose from the mobilization drill. It was justified because Plaintiff was absent and he did not cooperate with the subsequent investigation.

Plaintiff fails to establish a triable issues as to whether the protected activity was a but-for cause of Defendants' actions. Accordingly, he fails to establish a prima facie case, and his claim fails as a matter of law. *See Hunter*, 565 F.3d at 995-96; *Nassar*, 133 S.Ct. at 2534. In addition, Plaintiff fails to support his conclusory allegation that he can easily rebut Defendants' proffered reasons. Thus, no genuine issue of material fact exists regarding whether Defendants' proffered reasons were pretextual, and Plaintiff's retaliation claim must be dismissed.

Moreover, Plaintiff fails to show that any of the actions constituted an adverse employment action. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (an action is "materially adverse" when it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination"). The Sixth Circuit has previously found that actions which are more severe than those Plaintiff alleges did not constitute

materially adverse actions. *See Lahar v. Oakland County*, 304 Fed. Appx, 354, 357-58 (6th Cir. 2008) (holding that lower performance evaluations, three reprimands, and decreased job responsibilities did not rise to the level of an adverse employment action). Because none of Plaintiff's alleged retaliatory conduct affect his compensation, position, benefits, or job responsibilities, they do not constitute a materially adverse action. *See id.*

Finally, like the discrimination claims, Plaintiff says he can easily rebut Defendants' proffered legitimate, nondiscriminatory reasons, but he fails to provide any support actually showing the reasons were pretext for discrimination.

Because no genuine issue of fact exists regarding whether Defendants' proffered reasons were pretextual, Plaintiff's retaliation claim (Count IV) is dismissed. *See Harris*, 594 F.3d at 485.

## V.  CONCLUSION

The Court **GRANTS** Defendants' Motion for Summary Judgment; all of Plaintiff's claims are **DISMISSED**.

**IT IS ORDERED.**

                                                    S/Victoria A. Roberts  
                                                    Victoria A. Roberts  
                                                    United States District Judge

Dated:  January 10, 2014

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 10, 2014.

S/Carol A. Pinegar
Deputy Clerk